United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re Bimbo Bakeries USA FLSA Actions | NO. C 05-00829 JW  consolidated with NO. C 07-03156 JW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiffs[1] bring this consolidated putative class action against their employer, Bimbo Bakeries USA, Inc. ("Defendant") alleging, *inter alia*, violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and related state statutes.  Plaintiffs allege that Defendant failed to (1) pay minimum wage, overtime, and wages due at termination; (2) provide meal breaks and itemized wage statements; and (3) keep required records.

Presently before the Court is Defendant's Second Motion for Summary Judgment. (hereafter, "Motion," Docket Item No. 367.)  The Court conducted a hearing on June 16, 2008. Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES in part Defendant's Second Motion for Summary Judgment.

---

[1] Plaintiffs are Thomas Leonard, Cherle Bradaric, Gary Hoskins, Larry Brian Newman Jr., Chris Herr, William F. Harrison, Bob Jeter, Anthony Mott, Kathleen Morrison, Gary Castro, and Tom Teruso.

## II. BACKGROUND

**A.     Factual Background**[2]

Defendant is a wholesale baking business with its principal place of business in Fort Worth, Texas. Defendant distributes baked goods throughout the United States under brand names including Orowheat, Entenmann's, Thomas' English Muffins, Boboli, Francisco, Bimbo, Marinela, and Tia Rosa.

In California, Defendant employs "transport drivers" to transport products from their point of origin to distribution centers throughout California, and from those distribution centers to smaller distribution depots around the state. Defendant also employs Route Sales Representatives ("RSRs"), all union members, whose employment is governed by Collective Bargaining Agreements ("CBAs"). In contrast to the transport drivers, RSRs distribute from the smaller distribution depots to customers. Each RSR has his or her own "sales route" assigned pursuant to a bidding process set forth in the CBAs.

Plaintiffs are current and former RSRs employed by Defendant who allege they were denied certain compensation and workplace benefits guaranteed to them under state and federal law. (Consolidated Amended Complaint ¶ 1, hereafter, "CAC," Docket Item No. 314.)[3]

**B.     Procedural History**

On February 25, 2005, Thomas Leonard, Charlie Bradaric, Gary Hoskins, Larry Newman Jr., Chris Herr, and William Harrison ("Leonard Plaintiffs") filed this consolidated putative class action. (Docket Item No. 1.) On December 27, 2005, the Court granted in part the Leonard Plaintiffs' motion for conditional certification of an FLSA collective action. (Docket Item No. 89.)

---

[2] The material undisputed facts were summarized in the Court's September 28, 2007 Order, (hereafter, "September 28, 2007 Order," Docket Item No. 291), and the Court's May 8, 2008 Order, (hereafter, "May 8, 2008 Order," Docket Item No. 366.). The background presented here is adapted from those Orders.

[3] All citations are to the lead case unless otherwise indicated.

On May 15, 2006, the Leonard Plaintiffs filed a First Amended Complaint, alleging the following causes of action: (1) failure to pay wages at overtime rates, to pay minimum wage, and to keep records in violation of FLSA; (2) failure to pay wages at overtime rates in violation of California law and related violations, including minimum wage violations; (3) failure to provide meal breaks in violation of California law; (4) failure to pay wages on ending of employment in violation of California law; (5) failure to provide rest breaks in violation of California law; (6) failure to provide itemized pay statements in violation of California law; and (7) violation of California Business and Professions Code § 17200.

On September 28, 2007, the Court granted summary judgment for Defendant with respect to the following claims asserted by the Leonard Plaintiffs: (1) failure to pay minimum wages in violation of FLSA; (2) failure to maintain records in violation of FLSA; (3) failure to pay minimum wages in violation of California law; and (4) failure to pay overtime in violation of California law. (September 28, 2007 Order at 22.)

On November 21, 2007, the Court issued an order consolidating the Leonard Action with another action, the "Morrison Action," to form this consolidated putative class action. (Docket Item No. 313.) On November 30, 2007, Plaintiffs filed a Consolidated Amended Complaint, which alleges the same causes of action alleged in the First Amended Complaint. Plaintiffs not only amended the Complaint to reflect consolidation with Plaintiffs from the Morrison Action ("Morrison Plaintiffs"), but also added two new named Plaintiffs, Bob Jeter and Anthony Mott. (Id.) In response to various motions by the parties, the Court issued an order holding that its September 28, 2007 Order did not apply to the Morrison Plaintiffs or to Plaintiffs Jeter and Mott. (See May 8, 2008 Order at 6.)

Presently before the Court is Defendant's motion for summary judgment in which it seeks to have the Court apply its previous findings against the newly added Plaintiffs.

### III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." Id. at 323. The non-moving party must then identify specific facts "that might affect the outcome of the suit under the governing law," thus establishing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

Defendant moves for summary judgment against Plaintiffs Jeter, Mott, and the Morrison Plaintiffs on the ground that the Court's findings in its September 28, 2007 Order apply equally to these new Plaintiffs.[4] As the Court previously noted, Plaintiffs Jeter, Mott, and the Morrison Plaintiffs are not bound by the law of the case because they were not in the case at the time of the

---

[4] (Motion at 1.) Defendant contends that the new Plaintiffs are bound by the Court's September 28, 2007 Order because they had joined a conditionally certified FLSA class. (Motion at 14.) The Court already addressed this contention in its May 8, 2008 Order. (See May 8, 2008 Order at 6.)

4

ruling. Thus, while guided by its September 28, 2007 Order, the Court proceeds to consider whether summary judgment should be granted as to each of the newly added Plaintiffs.

**A.     FLSA Claims**

Defendant moves for summary judgment on Plaintiffs' FLSA claims on the grounds that (1) the overtime claim is barred by the Motor Carrier Act's exemption to FLSA overtime requirements, and (2) the minimum wage claim fails as a matter of law. (Motion at 14.) The Court considers each issue in turn.

**1.     Overtime Claim and the Motor Carrier Exemption**

The FLSA mandates payment at overtime rates for certain classes of employees. 29 U.S.C. § 207(a)(1). Under the Motor Carrier Act ("MCA"), employees for whom the Secretary of Transportation may regulate qualifications and hours of service are exempt from FLSA's overtime pay requirements. 29 U.S.C. § 213(b)(1). The MCA exemption applies where the employee falls within the MCA's grant of regulatory authority, without regard for whether the employee has been regulated directly. Morris v. McComb, 332 U.S. 422, 434 (1947); Klitzke v. Steiner Corp., 110 F.3d 1465, 1469 (9th Cir. 1997). The regulatory authority of the Secretary of Transportation under the MCA extends to situations were: (1) the employee operates a motor vehicle subject to regulation by the Secretary of Transportation, and (2) the employee's activities directly affect the safety of motor vehicles transporting passengers or property in interstate or foreign commerce. See 29 C.F.R. § 782.2 (a).

Here, since the parties do not dispute that Plaintiffs' activities affect motor vehicle safety, the Court considers this requirement for application of the MCA exemption satisfied. The Court proceeds to consider whether the other requirements are met.

**a.     Whether Plaintiffs Operated Motor Vehicles Subject to Regulation by the Secretary of Transportation**

The Secretary of Transportation's power to regulate under the MCA extends to the transportation of, *inter alia*, passengers or property by motor private carriers in interstate commerce. 49 U.S.C. §§ 13501, 31502(b). Prior to August 10, 2005, a "motor private carrier" was defined as a

person transporting property in interstate commerce by motor vehicle, where the property is owned by the person and is transported for sale. 49 U.S.C. § 13102(15) (2000). In this case, the parties do not dispute that while this definition was in effect, Plaintiffs operated motor vehicles within the scope of the Secretary of Transportation's regulatory power.

However, on August 10, 2005, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU") which narrowed the scope of the Secretary of Transportation's regulatory authority under the MCA. SAFETEA-LU amended the definition of "motor private carrier" found in 49 U.S.C. § 13105 to cover carriers transporting property only by "commercial motor vehicle (as defined in section 31132)." Section 31132 defines a "commercial motor vehicle" as a vehicle with a gross vehicle weight of at least 10,001 pounds. 49 U.S.C. § 31132. Thus, the Secretary's jurisdiction currently extends only to the operation of vehicles weighing in excess of 10,000 pounds. See Kautsch v. Premier Communications, 502 F. Supp. 2d 1007, 1015 (W.D. Mo. 2007). This change placed workers transporting property in vehicles weighing 10,000 pounds or less outside the MCA exemption, and back within the scope of FLSA. Id.

In this case, Defendant does not offer any direct proof that any of the newly added Plaintiffs operated a truck with a gross vehicular weight in excess of 10,000 pounds *during the time period* which forms the basis for their claims. Rather, Defendant presents declaration testimony of a single witness that (1) a majority of the Plaintiffs *currently* operate motor vehicles over 10,000 pounds, and (2) any of Plaintiffs may have potentially driven a vehicle over 10,000 pounds as a "loaner."[5] The Court has already found similar contentions insufficient to establish that any particular Plaintiff drove a commercial motor vehicle during the time periods in question. (September 28, 2007 Order at 13.) Accordingly, the Court finds that Defendant has not satisfied its burden to establish that the MCA exemption applies to Plaintiffs after the passage of SAFETEA-LU on August 10, 2005.

---

[5] (Declaration of Dan Hopson ¶ 58, Docket Item No. 370.)

### b. Whether Plaintiffs Carry Goods in Interstate Commerce

Transportation is interstate in nature if it involves the movement of goods or people across state lines. Walling v. Jacksonville Paper Co., 317 U.S. 564, 568 (1943). Transportation within a single state remains "interstate" in character when it forms a part of a "practical continuity of movement" across state lines from the point of origin to the point of destination. Id. The crucial factor in determining whether such continuity of movement exists is the intent of the shipper at the time of shipment. International Bhd. of Teamsters v. ICC, 921 F.2d 904, 907-08 (9th Cir. 1990). This, in turn, is determined by examination of the "entire panoply of facts and circumstances surrounding the transportation." Watkins v. Ameripride Servs., 375 F.3d 821, 825 (9th Cir. 2004) (internal quotations omitted).

In this case, with respect to the Leonard Plaintiffs, the Court has found an absence of a genuine dispute that they operated motor vehicles to move goods in the chain of interstate commerce. (September 28, 2007 Order at 11.) In their Opposition to the present motion, Plaintiffs contend they have new evidence which shows the intrastate character of the goods they transported prior to 2003.[6]

In support of this contention, Plaintiffs present select lines of a spreadsheet prepared by Daniel Hopson, Defendant's Vice-President of Sales, which detail the date and quantity of various products ordered from out of state.[7] However, upon examination of the full spreadsheet and the testimony of Mr. Hopson, the Court finds that the evidence shows the interstate nature of the goods transported.[8] For example, the Sales Spreadsheet evidences purchases of cereal bars from 2001 through 2005. (Sales Spreadsheet at 1.) Mr. Hopson testified that "Cereal bars always came from

---

[6] (Plaintiffs' Corrected Memorandum of Points and Authorities in Opposition to Defendant's Second Motion for Summary Judgment at 5, hereafter, "Opposition," Docket Item No. 381.)

[7] (Opposition at 5; Second Declaration of Ira Spirow in Opposition to Defendant's Second Motion for Summary Judgment, Ex. 4, Deposition of Daniel Hopson at 181-83, hereafter, "Hopson Depo.," Docket Item No. 380.)

[8] (See First Declaration of Ira Spiro in Support of Opposition to Motion for Summary Judgment, Ex. B, hereafter, "Sales Spreadsheet," Docket Item No. 376; Hopson Depo. at 165.)

7

outside of California." (Hopson Depo. at 165.) Similarly, the spreadsheet evidences purchases of "petites" from 2001 through 2005. (Sales Spreadsheet at 1.) Mr. Hopson testified that "to the best of my knowledge, we have been getting Petites from Beaverton [Oregon] [since] pre-2000." (Hopson Depo. at 163.)

Accordingly, the Court GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' FLSA overtime claim for periods prior to August 10, 2005, and DENIES for periods after August 10, 2005.

### 2. Minimum Wage Claim

To establish a minimum wage violation, a plaintiff must prove that work was performed for which they were not properly compensated and produce evidence to show "the amount and extent of that work as a matter of just and reasonable inference." Brock v. Seto, 790 F.2d 1446, 1448 (9th Cir. 1986) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). In determining whether a FLSA minimum wage violation has occurred, a workweek standard (i.e., dividing an employee's total number of hours worked in a week by weekly pay) is appropriate to calculate that employee's hourly wages. See Dove v. Coupe, 759 F.2d 167, 171-73 (D.C. Cir. 1985).

In this case, the federal minimum wage during the relevant time period was $5.15 per hour. 29 U.S.C. § 206(1). The Court has found that the Leonard Plaintiffs were paid in excess of the minimum wage. (September 28, 2007 Order at 14.) Defendant has offered evidence that Plaintiffs Jeter and Motte received a base weekly salary of $472 for 45 clock hours, or an hourly rate of approximately $10.49.[9] Similarly, Defendant has offered evidence that the Morrison Plaintiffs received a base weekly salary of $562 for 45 clock hours, or an hourly rate of $12.49. (Id.)

---

[9] (Declaration of Laura Thompson-McCann, Ex. A at 16, hereafter, "Thompson-McCann Decl.," Docket Item No. 373.) Defendant's exhibit actually shows multiple weekly base rates: there are separate rates for "inexperienced" RSRs, and the base rate has varied over the class period. (Thompson-McCann Decl. Ex. A at 16.) However, all rates listed are in excess of the federal minimum wage. Given Plaintiffs' failure to oppose Defendant's motion on this claim, it is unnecessary to consider these variations in detail.

8

Plaintiffs have not offered evidence they were paid less than minimum wage, and did not oppose Defendant's motion on this claim.[10]

Accordingly, the Court GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' FLSA minimum wage claim.

**B.     California State Law Claims**

Defendant moves for summary judgment on Plaintiffs' state law claims on the grounds that Plaintiffs were (1) exempted from California overtime, (2) paid in excess of the California minimum wage, (3) provided meal and rest breaks, and (4) provided adequate wage statements. (Motion at 21-26.) The Court considers each issue in turn.

**1.     Overtime Pay and the Collective Bargaining Agreement Exemption**

Employees in California are exempt from state overtime requirements if they are covered by a CBA that: (1) provides for the wages, hours of work, and working conditions of the employees; (2) provides premium wage rates for all overtime hours worked; and (3) provides a regular hourly rate of pay of at least 30 percent more than minimum wage. Cal. Lab. Code § 514; Cal. Code Regs. tit. 8, § 11010(3)(H). The overtime exemption allows employees to negotiate alternative overtime compensation schemes to the one provided by the state. Firestone v. Southern Cal. Gas Co., 219 F.3d 1063, 1067 (9th Cir. 2000); Lujan v. Southern Cal. Gas Co., 96 Cal. App. 4th 1200, 1212 (2002).

Plaintiffs contend that the newly added Plaintiffs' CBAs are defective because they determine overtime pay on a weekly,rather than a daily basis. (Opposition at 20-26.) The Court has already considered this contention in its September 28, 2007 Order and found that it is not supported by the law. (September 28, 2007 Order at 16.) Specifically, the California Labor Commissioner interprets the CBA exemption to leave the determination of how "overtime" is calculated to the parties to the CBA. DLSE Opinion Letter, April 2, 1991, at 3 n.2. Since the Commissioner's

---

[10] It is not clear whether the Consolidated Amended Complaint in fact alleges an FLSA minimum wage claim. Although the First Cause of Action is captioned "FLSA Overtime and Minimum Wage Violations," none of the allegations in the First Cause of Action mention failure to pay minimum wage; the allegations deal exclusively with failure to pay overtime.

9

1 interpretation is entitled to deference,[11] the Court finds the California CBA exemption applicable to
2 Plaintiffs.[12]

3 Accordingly, the Court GRANTS Defendant's motion for summary judgment with respect to
4 Plaintiffs' state claim for failure to pay wages at overtime rates.

### 2. Minimum Wage Requirements

The California minimum wage has varied during the time period relevant to this case. As of January 1, 2007, California minimum wage is set at $7.50 an hour. Cal. Lab. Code § 1182.12. Between January 1, 2002, and December 31, 2006, California minimum wage was set at $6.75 an hour. Cal. Lab. Code § 1182.11; Cal. Code Regs. tit. 8, § 11000(2).

In this case, the terms of the CBAs provide that at all times the RSRs were paid a base rate greater than the California minimum wage. (See, e.g., Thompson-McCann Decl. ¶ 3, Ex. A at 6, 16.) Plaintiffs renew their contention that the base rate is only applicable to the 40 hours of actual work performed by the RSRs, and not to the five additional meal or rest break hours during the week. (Opposition at 28-29.) The Court considered this argument in its September 28, 2007 Order and found that it was not supported by law or by the evidence presented. (September 28, 2007 Order at 17-18.) Plaintiffs have not made a further showing which would alter the Court's analysis.

Accordingly, the Court GRANTS Defendant's motion for summary judgment with respect to Plaintiffs' state claim for failure to pay minimum wage.

//

---

[11] Lujan, 94 Cal. App. 4th at 1212.

[12] On October 1, 2008, the Court granted Plaintiffs' administrative motion to file a statement of recent decision. (Docket Item No. 403.) Plaintiffs submitted a recent decision by Judge Marilyn Patel, Wylie v. Foss Maritime Co., 2008 WL 4104304 (N.D. Cal. Sept. 4, 2008). The Court finds that the CBA in this case is distinguishable from the CBA in Wylie. Thus, the Court's analysis is not necessarily inconsistent with the Wylie decision.

### 3.    Meal and Rest Break Claims

Under California Labor Code § 226.7, employers are prohibited from requiring employees to work during meal periods mandated by the Industrial Welfare Commission ("IWC").[13] Under IWC Wage Order No. 9, an employer must provide a 30 minute meal break for every five hours worked. 8 Cal. Code Regs. § 11090(11). During meal periods, the employee must be relieved of all duty, unless the employee agrees in writing to an on-the-job paid meal period.[14] Id. Recently, the California Court of Appeals has held that "employers need not ensure meal breaks are actually taken, but need only make them available." Brinker Restaurant Corp. v. Superior Court, 2008 WL 2806613, at *21 (Cal. Ct. App. 2008).[15]

In this case, Plaintiffs state that they were rarely able to take meal breaks because the demands of the routes were too great.[16] There is evidence that Plaintiffs informed their management that it was difficult for them to comply with the break requirements and complete their routes on time.[17] There is also evidence that some Plaintiffs were able to take breaks on some days. (Lazerson Decl., Ex. I at 16 and Ex. N.) Thus, there is a genuine dispute over whether Plaintiffs were in fact

---

[13] Although the Industrial Welfare Commission (IWC) was defunded by the California Legislature effective July 1, 2004, its wage orders remain in effect. Bearden v. U.S. Borax, Inc., 138 Cal. App. 4th 429 (2006).

[14] Employers must also keep "[t]ime records showing when the employee begins and ends each work period." 8 Cal. Code Regs. § 11090(7). "Meal periods, split shift intervals and total daily hours worked shall also be recorded." Id. Meal periods during which operations cease and authorized rest periods need not be recorded. Id. However, Cal. Labor Code § 226.7 only creates civil liability for failure to provide meal and rest breaks, not for failure to record them.

[15] Defendant seeks to bring Brinker to the Court's attention by filing an Administrative Motion to Provide Notice of a Recent Decision. (See Docket Item No. 391.) Plaintiffs object to the Court's consideration of Brinker on the ground that the decision is not final and may be reviewed by the California Supreme Court. (See Docket Item No. 393.) Since the Court discovered Brinker in the course of its own research, the Court DENIES Plaintiff's motion as moot. The Court also OVERRULES Plaintiffs' objection; if Brinker is later reversed, Plaintiffs may file a motion for reconsideration.

[16] (2008 Declarations of Plaintiffs in 2007 Opposition to Defendant's Second Motion for Summary Judgment ¶ 12, Docket Item No. 378.)

[17] (Declaration of Wendy Lazerson in Support of Defendant's Second Motion for Summary Judgment, hereafter, "Lazerson Decl.," Ex. P(A), Docket Item No. 371.)

United States District Court
For the Northern District of California

1 relieved of duty for the appropriate periods of time so that they could take meal and rest breaks, as
2 required under California Law.

3 Accordingly, the Court DENIES Defendant's motion for summary judgment with respect to
4 Plaintiffs' meal and rest break claims.

### 4. Wage Statement Claim

California Labor Code Section 226 specifies the content of paycheck stubs. The statute directs employers to provide each employee, at the time wages are paid, with a separable statement showing, among other things, the gross and net wages earned, the total hours the employee worked, all deductions, the dates of the pay period, the employee's name and identification number, the employer's name and address, and all applicable hourly rates in effect during the pay period. Cal. Lab. Code § 226(a). The obligation to provide hours worked can only be fulfilled by listing the precise number of hours worked by the employee. Zavala v. Scott Brothers Dairy, Inc., 143 Cal. App. 4th 585, 591-92 (2006). However, employers are not required to list actual working hours for exempt employees. Cal. Lab. Code § 226.

In this case, it is undisputed that the wage statements provided by Defendant did not meet the requirements of § 226(a). Rather, Defendant reported that Plaintiffs worked a minimum of 40 or 45 hours per week, depending on the applicable CBA provision, regardless of the actual hours worked. (Declaration of Ira Spiro Re: Deposition Pages, Ex. 6, Lewis Declaration at 37, 48-49.) Defendant contends however that any violation of § 226 was not "knowing and intentional" and that Plaintiffs have suffered no injury from the improperly recorded hours. (Motion at 27.)

In Perez v. Safety-Kleen Sys., Inc., the court found that a standard practice of recording a set number of hours rather than the number of hours worked was sufficient to show a "knowing and intentional" violation of § 226. 2007 WL 1848037, *9 (N.D. Cal. 2007). The court also found that the failure to accurately record can cause injury, not only through lost wages left unpaid, but also by making it harder to determine the amount of damages for violations of meal and rest break laws. Id. Here, the Court has denied summary judgment with respect to Plaintiffs' meal and rest break claims. Thus, as in Perez, Plaintiffs have sustained injury as a result of the additional complication and

12

expense of determining the meal and rest breaks they were entitled to from their wage statements. Even assuming Plaintiffs are unable to prove injury pursuant to Section 226(e), the finding of a violation would still entitle Plaintiffs to injunctive relief, and recovery of costs and attorney fees. See Cal. Lab. Code § 226(g).

Accordingly, the Court DENIES Defendant's motion for summary judgment with respect to Plaintiffs' wage statement claim.

### C. Unfair Competition Law Claim

Defendant moves for summary judgment on the basis that, if the Court grants summary judgment on Plaintiffs' other claims, Plaintiffs can identify no unlawful business practice on which to base a § 17200 claim. The Court has denied summary judgment as to certain FLSA and California exemptions, and, as a result, various claims remain in the lawsuit. Proof of such claims would provide a basis for a derivative § 17200 claim. Accordingly, the Court DENIES summary judgment with respect to Plaintiffs' § 17200 claim.

## V. CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Second Motion for Summary Judgment as follows:

The Court GRANTS summary judgment with respect to the following claims:

(1) First Cause of Action for alleged failure to pay minimum wage and for failure to pay overtime wages prior to August 10, 2005, in violation of the FLSA; and

(2) Second Cause of Action for alleged failure to pay wages at overtime rates and failure to pay minimum wage under California law.

The Court DENIES summary judgment with respect to the following claims:

(1) First Cause of Action for alleged failure to pay overtime wages after August 10, 2005, in violation of FLSA;

(2) Third Cause of Action for alleged failure to provide meal breaks under California law;

(3) Fourth Cause of Action for alleged failure to provide rest breaks under California law;

(4) Fifth Cause of Action for alleged failure to pay all wages upon termination of employment under California law;

13

(5) Sixth Cause of Action for alleged failure to provide itemized wage statements under California law; and

(6) Seventh Cause of Action for unfair business practices pursuant to § 17200.

The Court sets a Further Case Management Conference for **November 17, 2008 at 10 a.m.** On or before **November 7, 2008**, the parties shall file a Joint Case Management Statement. The Statement shall, among other things, update the Court on the parties' settlement efforts and readiness for trial.

Dated: October 24, 2008

JAMES WARE
United States District Judge

14

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Carolyn Blecha Hall carolyn.hall@bingham.com
Dennis Frank Moss jeanette@spiromoss.com
Elizabeth Jean Carroll betsy.carroll@bingham.com
Joseph J. Gigliotti gigliottilaw@msn.com
Katherine J. Odenbreit kodenbreit@smbhblaw.com
Kristen Pezone kristen.pezone@bingham.com
Michael James Walsh michaeljwalshesq@aol.com
Michael Scott Langford mklangford@aol.com
Rebecca Sobie rsobie@smbhblaw.com
Robert Ira Spiro ira@spiromoss.com
Wendy M. Lazerson wendy.lazerson@bingham.com

**Dated: October 24, 2008**          **Richard W. Wieking, Clerk**

**By:  /s/ JW Chambers**
       **Elizabeth Garcia**
       **Courtroom Deputy**