1   SPIRO MOSS LLP
    Ira Spiro, State Bar No. 67641
2   ira@spiromoss.com
    11377 W. Olympic Blvd. Fifth Floor
3   Los Angeles, CA  90064
    Telephone:        (310) 235-2468,
4   Facsimile:        (310) 235-2456
    Attorneys for Plaintiffs,
5   Thomas Leonard, Charlie Bradaric,
    Gary Hoskin, Larry Brian Newman, Jr., Chris Herr,
6   William F. Harrison, Bob Jeter and Anthony Mott,
    Katleen Morrison, Gary Castro, and Tom Terusa,
7   Individually and all those similarly situated

8   WALSH & WALSH, PC
    Michael J. Walsh, State Bar No. 155401
9   michaeljwalshesq@aol.com
    420 Exchange, Suite 270
10  Irvine, California  92602
    Telephone:        (714) 544-6609
11  Facsimile:        (714) 544-6621
    Attorneys for plaintiffs,
12  Thomas Leonard, Charlie Bradaric,
    Gary Hoskin, Larry Brian Newman, Jr., Chris Herr,
13  William F. Harrison, Bob Jeter and Anthony Mott,
    Katleen Morrison, Gary Castro, and Tom Terusa,
14  Individually and all those similarly situated

15  Additional counsel for plaintiffs listed below

16                  UNITED STATES DISTRICT COURT

17       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

18

19  In re BIMBO BAKERIES USA FLSA          No.  C 05 00829 (JW)
                                           ASSIGNED TO HON. JAMES WARE,
20  ACTIONS,                               COURTROOM 8

21                                         PLAINTIFFS' NOTICE OF MOTION
                                           AND MOTION FOR FINAL APPROVAL
22                                         OF:  (1) CLASS ACTION SETTLEMENT
                                           AND JUDGMENT; (2) PAYMENT TO
23                                         PLAINTIFFS; (3) COSTS OF
                                           ADMINISTRATION; AND (4)
24                                         ATTORNEY'S FEES AND COSTS;
                                           MEMORANDUM OF POINTS AND
25                                         AUTHORITIES IN SUPPORT THEREOF

26                                         Date: June 7, 2010
                                           Time: 9:00 a.m.
27                                         Courtroom: 8

28

                                      1
            PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT

338.013 MJW 05282010v7

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2

3    PLEASE TAKE NOTICE that Plaintiffs, through their co-lead counsel of record, hereby

4    submit their motion for an order granting final approval for the settlement in the consolidated

5    case *Leonard v. Bimbo Bakeries USA, Inc.*, Case No. C-05-0829-JW (cons. with *Morrison v.*

6    *Bimbo Bakeries USA, Inc*., Case No. C-07-03156 JW), pursuant to Federal Rules of Civil

7    Procedure ("FRCP") 23(a), (b)(3) and (e). The matter will be heard on June 7, 2010 at 9:00 a.m.,

8    or such other date and time as the Court may order, in Courtroom 8 in the San Jose Division of

9    the U.S. District Court for the Northern District of California, located at 280 South 1st Street,

10   San Jose, CA 95113.

11

12   The parties request that the court: grant final approval of the proposed class action

13   settlement and plan of distribution; enter a final order and judgment consistent with the terms of

14   the settlement; approve the service payments of $10,000 each to named Plaintiffs Thomas

15   Leonard, Charlie Bradaric, Gary Hoskins, Larry Newman, Chris Herr, William Harrison,

16   Kathleen Morrison, Gary Castro and Thomas Terusa; approve the payment of reasonable

17   administrative costs to the Claims Administrator, Simpluris, LLC, in the amount of up to

18   $32,000; approve attorney's fees in the amount of $1,125,000 and approve reimbursement of

19   attorney costs in the amount of $108,476.59 pursuant to FRCP 23(h) and 54(d), (e) and (h).

20

21   This motion is based upon this notice of motion and motion and the points and authorities

22   set forth below; the executed Joint Stipulation of Class Settlement and Release ("Settlement

23   Agreement" or "Settlement") preliminarily approved by the Court on February 8, 2010; the

24   Order Granting Preliminary Approval of Settlement dated and entered February 11, 2010; the

25   declarations of plaintiffs' counsel Ira Spiro, Michael J. Walsh, Michael S. Langford, Joe Gigliotti

26   and Rudy Ginez, Jr.; the declarations of plaintiffs Thomas Leonard, Charlie Bradaric, Gary

27   Hoskins, Larry Newman, Chris Herr, William Harrison, Kathleen Morrison, Gary Castro and

28   Thomas Terusa and the declaration of Krista Tittle for class administrator Simpluris, LLC filed

2

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

herewith in support of this motion, together with the exhibits attached thereto and the pleadings

and orders on file herein, and all other papers on file in this action.

Respectfully submitted,

DATED May 28, 2010                    SPIRO MOSS LLP

                                      By: _____/s/_____.
                                            Ira Spiro
                                            Attorneys for plaintiffs

DATED May 28, 2010                    WALSH & WALSH, P.C.

                                      By: _____/s/_____.
                                            Michael J. Walsh
                                            Attorneys for plaintiffs


**Additional Attorneys for plaintiffs:**

LANGFORD & LANGFORD, a PLC          GIGLIOTTI & GIGLIOTTO, L.L.P
Michael S. Langford (SBN 125756)    Joseph J. Gigliotti (SBN 144979)
24681 La Plaza, Suite 220           gigliottilaw@msn.com
Dana Point, California 92629        434 East Chapman Avenue
mklangford@aol.com                  Fullerton, California  92832
Telephone:  (949)545-6540          Telephone:     (714) 879-1712
Fax:  (949) 545-6541               Fax:           (714) 879-3429
Attorneys for Kathleen Morrison *et al.*   Attorneys for Kathleen Morrison *et al.*

GINEZ, STEINMETZ & ASSOCIATES
Rudy Ginez, Jr. (SBN 84978)
926 North Flower Street
Santa Ana, California  92703
Telephone:     (714) 541-2251
Fax:           (714) 541-5807
Attorneys for Kathleen Morrison *et al.*

3

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

338.013 MJW 05282010v7

**TABLE OF CONTENTS**                                                                 Page

I.      INTRODUCTION ..................................................................................................... 1

II      PROCEDURAL HISTORY ....................................................................................... 2

III.    THE SETTLEMENT TERMS ................................................................................... 4

IV.     THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ........................... 7

V.      THE SETTLEMENT IS FAIR AND IN THE CLASS'S BEST INTEREST ......................... 9

        A.  The Proposed Settlement is Fair to the Class ................................................ 10

        B.  The Responses of the Settlement Class Support Final Approval ...................... 11

        C.  The Payments to the Plaintiffs for Their Service to the Class Are Reasonable .......... 11

        D.  The Proposed Attorneys' Fees and Expenses Are Reasonable ........................ 12

        E.  The Court Should Approve the Payment of Reasonable Administration Costs .............. 17

VI      CONCLUSION ....................................................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

338.013 MJW tables 05282010v8

**TABLE OF AUTHORITIES**

Cases                                                                                          Page

*Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp*., 480 F. Supp. 1195, 1199
(S.D.N.Y. 1979), aff'd 622F.2d 1106 (2nd Cir. 1980)............................................................13

*Barcia v. Contain-A-Way, Inc*., 2009 WL 587844, *7 (S.D. Cal. Mar. 6, 2009)...............12

*Boeing Co. v . Van Gemert*, 444 U.S. 472, 478 (1980) ........................................................13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1991) ...........................2, 7, 11, 16

*Christensen v. United States*, 65 Fed.Cl. 625, 629 (Fed. Cl. 2005) ....................................10

*Fears v. Wilhelmina Model Agency, Inc.,* 2005 WL 1325297, 2005 U.S.Dist. LEXIS 7961,
(S.D.N.Y.2005) aff'd in part, vac. in part, 473 F.3d 423 (2d Cir. 2007)................................10

*Glass v. UBS Financial Services, Inc*., 331 Fed.Appx. 452, 456-457 (9th Cir. 2009).......14

*Guam Soc. of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 697-99
(9th Cir. 1996) ....................................................................................................................14

*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)............................................................16

*Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001) ................................12

*In re Activision Sec. Litig*., 723 F. Supp. 1373, 1375 (S.D.N.Y.2001)..............................13

*In re American Bank Note Holographics, Inc*., 127 F.Supp.2d 418 (S.D.N.Y.2001) .......11

*In re Ampicillin Antitrust Litig*., 526 F. Supp. 494, 498 (D.D.C. 1981) .............................13

*In re Omnivision Technologies, Inc*., 559 F.Supp.2d 1036 (ND Cal 2008)....2, 7, 11, 13, 16

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) .............................13

*In re United Energy Corp. Solar Power Modules Tax Shelter Investment Sec. Litig*.,
1989 WL 73211, *6 (C.D. Cal. Mar. 9, 1989) .....................................................................16

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)................................9

*Newman v. Stein,* 464 F.2d 689, 693 (2d Cir.1972) ................................................................9

*Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970) ...........................................................9

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Cases                                                                                                    Page

*Officers for Justice v. Civil Serv. Com'n of City & County of San Francisco,*
688 F.2d 615, 625 (9th Cir. 1982)........................................................................... 7, 9, 16

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F.Supp.2d 1021
(N.D. Cal. 1999) .......................................................................................................2

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ...................................7

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ...................... 12, 14

*Weinberger v. Kendrick*, 698 F.2d 61, 69, 74 (2d Cir. 1983) .....................................8


Federal Statutes                                                                                          Page

29 U.S.C. § 201 ...........................................................................................................2

Federal Rules of Civil Procedure

FRCP 23(b)(3)..............................................................................................................4
FRCP 23(e)(1)(c) ......................................................................................................1, 2
FRCP 23(e)(2)..............................................................................................................7
FRCP 23(h) ................................................................................................................12

California Statutes                                                                                       Page

California Business & Professions Code § 17200.................................................................2, 6
California Labor Code § 226 .............................................................................................3

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

338.013 MJW tables 05282010v8

I.    **INTRODUCTION**

Plaintiffs Thomas Leonard, Charlie Bradaric, Gary Hoskins, Larry Newman, Chris Herr, William Harrison, Kathleen Morrison, Gary Castro and Thomas Terusa (collectively the "Plaintiffs" or "Class Representatives"), for themselves and for the conditionally certified class, respectfully submit this memorandum in support of final approval of the Proposed Settlement between Plaintiffs and defendant Bimbo Bakeries USA, Inc. ("BBU"), pursuant to FRCP 23(e). After five years of hard fought litigation and two full day mediations, the parties agreed to a proposed settlement that resolved all of the Plaintiffs' claims alleged in the consolidated action now pending before this Court - comprised of the lead case *Leonard et al. v. Bimbo Bakeries USA, Inc.*, Case No. C-05-0829-JW (the "Leonard Action"), as consolidated with *Morrison et al. v. Bimbo Bakeries USA, Inc*., Case No. C-07-03156 JW (the "Morrison Action").  The Settlement provided for BBU to pay up to $3,750,000 to resolve the class members' claims. The Settlement established a claims process by which class members who verified that they suffered damages could submit a Claim Form for their share of the Qualified Settlement Fund ("QSF"), to be proportionally divided among participating class members based on the number of weeks that they worked in a covered position during the class period, with a minimum claim of $100 per participating class member. The Settlement provided that no less than half of the QSF would be paid out; that provision has become moot as a result of the robust and positive response from the class, wherein more than 60% of the class members, who represented more than 70%[1] of the eligible work weeks, submitted claims.

For the same reasons that this Settlement was appropriately given preliminary approval by the Court in February 2010, the Settlement readily merits final approval. Sufficient discovery was conducted to enable Class Counsel – who are highly-experienced wage-and-hour class action attorneys – to evaluate the claims and defenses in the action. The Settlement is in line with the strengths and weaknesses of Plaintiffs' case. Among 2,506 Class Members, not one has objected to the Settlement, and barely one percent opted out. More than sixty percent of class

---

[1] As of May 28, 2010, the percentage of workweeks claimed by the class members who submitted timely and valid proofs of claim was 70.62% of all workweeks.

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

1  members submitted claims, and their submissions represented 70% of the eligible workweeks.

2  Finally, the proposed pre-class certification settlement of $3.75 million falls well within the

3  range of reasonableness, given the risks, expenses, complexity, and likely duration of further

4  litigation. See, e.g., *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *San*

5  *Francisco NAACP v. San Francisco Unified School District*, 59 F.Supp.2d 1021, 1028 (N.D.

6  Cal. 1999); *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1041 (N.D. Cal. 2008).

7  The record with respect to each of these factors establishes that the settlement is fair, reasonable,

8  and adequate. FRCP 23(e)(1)(C). Final approval should therefore be granted.

9  **II.     PROCEDURAL HISTORY**

10          In February 2005, Thomas Leonard, Larry Brian Newman, Jr., Chris Herr, Williams F.

11  Harrison, Charles Bradaric and Gary Hoskins brought this action against Bimbo Bakeries USA,

12  Inc. under the Fair Labor Standards Act ("FLSA") and the California Labor Code for various

13  claims arising out of alleged off-the-clock work and meal and rest break violations.  They alleged

14  that BBU misclassified Plaintiffs and the proposed class as exempt under the FLSA, 29 U.S.C. §

15  201 *et seq.*, and California wage-and-hour laws and, on that basis, failed to pay Plaintiffs and

16  others for overtime wages, to provide them with meal periods and rest breaks, to timely pay all

17  wages owed, and to provide them with correctly itemized wage statements. Plaintiffs also alleged

18  that this constituted unfair competition under Business & Professions Code § 17200 *et seq.* In

19  June 2005, BBU answered, denying the allegations, and maintaining that the case was not

20  suitable for certification.

21          Prior to the consolidation of the Leonard Action and the Morrison Action, the Court granted

22  a motion conditionally certifying an FLSA collective action in the Leonard Action, but notice to

23  potential members in the collective action was stayed pending various proceedings, including

24  motions for partial summary judgment. Experts were retained, approximately 20 depositions were

25  taken, a great deal of written discovery was exchanged, and summary judgment motions were

26  submitted. The motions were granted in part and denied in part.

27          In December 2006, plaintiffs Kathleen Morrison, Gary Castro and Tom Teruso brought a

28  similar action against BBU in state court.  BBU removed the Morrison Action to U.S. District Court

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

and brought a motion to dismiss or stay that case pending the outcome of the Leonard Action. Instead, the Morrison Action was transferred to the Northern District of California and consolidated with the Leonard Action in November 2007. Two additional plaintiffs intervened in the Leonard Action, and the plaintiffs in both actions then filed a joint consolidated complaint and proceeded as a single action. BBU filed additional motions to strike, motions to dismiss, motions to de-certify the conditionally certified class, and a second motion for partial summary judgment. The court denied the motions to strike and dismiss, and granted in part and denied in part the motion for partial summary judgment. Subject to a potential appeal, that ruling eliminated the claims for minimum wage and all overtime arising under state law, as well as overtime claims arising under the FLSA prior to August 10, 2005. Surviving the motions for partial summary judgment were Plaintiffs' claims for: (i) overtime under the FLSA after August 10, 2005, (ii) wage statement penalties under Labor Code § 226, (iii) meal period pay, (iv) rest period pay, (v) waiting time penalties; and (vi) restitution under the Unfair Competition Law.

Plaintiffs sought leave to file an appeal of certain issues related to the overtime and minimum wage claims; the court denied that motion in January 2009. In February, the parties filed competing motions for certification and for an order that the case could not be certified; those motions were argued on May 18, 2009 and the Court took them under submission. Before the Court issued its ruling, the parties agreed upon a mediator – the Honorable William J. Cahill – and requested that the Court stay any decision on the certification motions pending the outcome of that mediation. Although that mediation, on August 5, 2009, was not successful, the parties scheduled a second mediation on September 16, 2009 with respected class action mediator Mark S. Rudy. This mediation resulted in the parties accepting a mediator's proposal a few days later. The Court's decision on the certification motions remains stayed pending this final approval motion.

On February 8, 2010, the court granted the parties' joint motion for preliminary approval, and on February 11, 2010, the court entered its order preliminarily approving the settlement. On March 8, 2010, the written notice approved by the court was mailed to 2,493 class members. There were 13 class members who were not on the original class list, but were subsequently identified as eligible class members and who submitted claims, bringing the class size to 2,506. All but 77 (3%)

3

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

1    of the notices were delivered successfully. These few remaining class members could not be located

2    at their prior addresses or any forwarding address that could be located through postal records or

3    national address registries. Class members were given 45 days to submit objections or exclusions,

4    and 60 days to submit claims. On April 2, 2010, reminder notices were sent to 1,873 class members

5    who had not yet submitted claims. Valid and timely claims were submitted by 1,526 class members,

6    13 of whom raised disputes about their workweeks.[2] Another 40 class members submitted late or

7    deficient claims. The parties are currently working to try to resolve the few remaining disputes and

8    deficiencies. No class members submitted objections. Twenty submitted valid exclusions; another

9    60 submitted deficient exclusions, including 3 incomplete forms and 57 exclusions that the

10   Settlement requires to be disregarded because those class members also submitted claims.

11   **III.      THE SETTLEMENT TERMS**

12           As detailed in Plaintiffs' Motion for Preliminary Approval, the Settlement provides for

13   the following:

14           Cash Consideration: The Settlement Agreement provides that BBU shall make a

15   settlement payment of Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000) to

16   fund the QSF pursuant to this Settlement.  BBU will also pay the employer's share of payroll

17   taxes on the portions of the Settlement Shares allocated to wages. The QSF will be the source of

18   funding all payments under the Settlement other than the employer's share of payroll taxes.

19   Walsh Dec. ¶¶ 2, 5.  All claims by Class Members will be paid by check, with no non-cash

20   consideration such as coupons or vouchers. *Id.*

21           Class Definition: For purposes of the Settlement only, which does not require an

22   assessment of manageability under FRCP 23(b)(3), the Parties stipulate that the Court may

23   certify the Class as an opt-out class under FRCP Rule 23(b)(3). The Settlement Class consists of

24   "all persons who were on the payroll of BBU for at least one day during the applicable Class

25   Period [from February 25, 2001 to the date of Preliminary Approval] employed in the position of

26   Route Sales Representative and/or substantially similar jobs (e.g., relief/vacation Route Sales

27   Representative, or route sales extra) in the State of California." The parties estimated the class size

28   _____
     [2] The parties expect these disputes to be resolved on or before June 7, 2010.

4

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

to be 2,500 at the time preliminary approval; the final count included 2,506 class members. Tittle Dec. ¶¶ 6, 10.

Calculation of Shares: A Claimant's Settlement Share will be his or her minimum payment of one hundred dollars ($100) plus the product of the "Net QSF" times the percentage (rounded up or down to the nearest five-digit decimal) of (i) that Claimant's number of Compensable Work Weeks divided by (ii) the total of all Class Members' Compensable Work Weeks. The "Net QSF" will equal the proceeds of the QSF at the time of distribution less (i) the Class Representative Payments, (ii) the Class Counsel Attorneys' Fees and Costs Payment, (iii) the Settlement Administrator's reasonable fees and expenses, including the costs of mailing all notices, reminders and checks pursuant to this Settlement, and (iv) a minimum payment of $100 to each of the Claimants. Walsh Dec. ¶ 11.

Fees, Costs, Administration and Representative Payments: Subject to court approval, Plaintiffs shall receive an award of Class Representative Payments from the QSF in an amount not to exceed $10,000 for each Class Representative for his or her services as a class representative in addition to his or her Settlement Share, and Class Counsel shall recover attorneys' fees and costs from the QSF in an amount not to exceed $1,125,000 for attorneys' fees plus a reasonable amount, not to exceed $120,000 ($108,476.59 being the actual tally), for costs and expenses. Plaintiffs' Counsel asserts that the fees requested are well within the lodestar amount through this date, which rate they assert is reasonable considering the risks presented by undertaking and pursuing this litigation. The Settlement provides for service incentive awards for nine of the eleven putative class representatives (two plaintiffs, Bob Jeter and Arthur Motte, ultimately chose not to serve as representatives and will not seek any enhanced award) in the amount of $10,000 - less than 0.3% of the total settlement fund. Walsh Dec. ¶ 8.

Releases: In exchange for payment, the Class Members release BBU and related entities from all claims, obligations, causes of action, actions, demands, rights, and liabilities of every kind, arising prior to March 31, 2010, (1) relating to claims that were pled in the Action, and/or (2) which could have been pled which arise out of or relate to classification or misclassification

5

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

of exempt status in the consolidated Action, including but not limited to claims for (i) the alleged

failure to pay any type of overtime wages, (ii) the alleged failure to pay minimum wage, (iii) the

alleged failure to provide meal periods or rest breaks, (iv) the alleged failure to provide itemized

wage statements, (v) the alleged failure to timely pay wages due, (vi) any alleged failure to

provide benefits; and (vii) all other wage/hour and wage payment Claims arising under the laws

of the State of California and arising from or related to classification or misclassification of

exempt status, including, without limitation, statutory, constitutional, regulatory, contractual or

common law claims for wages, damages, and unpaid costs;  any and all of the following based

on the foregoing claims and/or causes of action: penalties (including penalties under PAGA),

liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or

equitable relief; and Claims for unfair business practices or unfair competition, including,

without limitation, claims arising under California Bus. & Prof. Code sections 17200 *et seq.*

Class Members who submit claims and receive payment also release their claims pursuant to the

FLSA, including claims for wages, overtime, straight time, minimum wages, meal and rest

breaks, premium pay, liquidated damages, interest, attorneys' fees, litigation costs, restitution,

and equitable relief. Walsh Dec. ¶ 10.

Administration: The Settlement Agreement also provided that Simpluris, LLC, an

experienced neutral class action claims administrator shall be responsible for providing notice,

processing claims and distributing proceeds. Simpluris provided a bid with a flat cap of $32,000 to

administer the class. Walsh Dec. ¶ 6. A written notice was provided to all class members at their

last known address, based upon the defendant's personnel files for each. For each class member

whose notice was returned due to an incorrect or outdated address, the claims administrator used the

National Change of Address Database maintained by the United States Postal Service to review the

accuracy of addresses and, where possible, to obtain updated mailing addresses. This process

resulted in notices being sent, without being returned by the post office, for 97% of the class

members. Class members had 60 days to submit claims to the claims administrator. Class members

submitting timely but deficient claims were given ten business days, after notice of the deficiency,

within which to cure. Class members who wished to object to the terms of the settlement, or to

6

1   exclude themselves from the settlement, had 45 days to do so. None objected. Only 20 excluded

2   themselves. For tax purposes, the settlement shares and grounds therefore are being allocated 50%

3   for wages (for which Simpluris will issue a Form W-2 to the Claimant, payroll tax withholding

4   and deductions will be taken, and the employer's share of payroll taxes on that portion will be

5   paid by BBU) and 50% for interest, liquidated damages, and penalties (for which no payroll tax

6   withholding and deductions will be taken and Simpluris will issue a Form 1099 to the Claimant).

7   **IV.     THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

8          The law favors settlement, particularly in class actions and other complex cases where

9   substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.

10  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re Omnivision*

11  *Technologies, Inc.*, 559 F.Supp.2d 1036, 1041 (N.D. Cal. 2008). Final approval of a proposed

12  class action settlement will be granted where it is established that the proposed settlement is

13  "fair, reasonable, and adequate." FRCP 23(e)(2). In determining whether to grant final approval,

14  the Court need not "reach any ultimate conclusions on the contested issues of fact and law which

15  underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

16  avoidance of wasteful and expensive litigation that induce consensual settlements." *Class*

17  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992), quoting *Officers for Justice v.*

18  *Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982). In determining the fairness,

19  reasonableness and adequacy of the settlement, the Court must balance several factors, which

20  may include: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of

21  further litigation; the risk of maintaining class action status throughout the trial; the amount

22  offered in settlement; the extent of discovery completed, and the stage of the proceedings; the

23  experience and views of counsel; the presence of a governmental participant (all of which were

24  addressed previously at the time the Court granted preliminary approval); and the reaction of the

25  Class Members to the proposed settlement (which was not known at the time of preliminary

26  approval). The relative importance to be attached to any particular factor will depend upon the

27  nature of the claims, the types of relief sought, and the unique facts and circumstances presented

28  by the individual case. *Id*; See also *In re Omnivision*, 559 F.Supp.2d at 1040-41.

7

1        Consideration of these factors fully supports this Settlement. Final approval is justified by

2    the balance between the strength of the Plaintiffs' case, the risk, expense, complexity and likely

3    duration of further litigation, and the risk of maintaining class action status throughout the trial;

4    the amount offered in settlement; the extent of discovery completed and the stage of the

5    proceedings; the experience and views of counsel; and the extremely positive reaction of the

6    Class to the proposed settlement. Walsh Dec. ¶ 17; Tittle Dec. ¶¶ 11, 17.  The Settlement

7    resulted from extensive arm's length negotiations that included multiple rounds of formal

8    mediation with the Honorable William J. Cahill and Mark S. Rudy. Walsh Dec. ¶ 2.

9        All of the indicia of fairness are satisfied here.  Class Counsel are experienced litigators

10   with extensive experience in complex litigation, particularly in wage-and-hour litigation. Walsh

11   Dec. ¶¶ 19-22. Counsel for each party have devoted many years to this litigation, consequently

12   they are thoroughly familiar with the factual and legal issues. Walsh Dec. ¶¶ 21-22. The

13   Settlement followed extensive legal and factual investigation by Plaintiffs' counsel into the

14   merits of their claims, as tested by the vigorous attacks on the pleadings and facts in BBU's

15   numerous motions, including a motion to preclude class certification that has been briefed,

16   argued and taken under submission pending the outcome of this approval process. During the

17   course of the litigation, Plaintiffs' Counsel obtained and reviewed thousands of records through

18   discovery, independent investigations and a mediation-privileged exchange of records in

19   anticipation of the two mediations. The information provided by BBU was sufficient to

20   determine the full extent of BBU's potential exposure. Walsh Dec. ¶ 16.  This extensive

21   investigation through the discovery process and analyses by Plaintiffs' counsel and experts

22   provide evidence that Plaintiffs' Counsel had access to all relevant information regarding the

23   settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 69, 74 (2d Cir. 1983) (superseded on other

24   grounds by 1983 revision to Rule 11). Throughout the painstaking process of finalizing the

25   Settlement Agreement, there was absolutely no hint of collusion or fraud. Instead, the protracted

26   negotiations are indicative of fairness.

27

28

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

## V.        THE SETTLEMENT IS FAIR AND IN THE CLASS'S BEST INTEREST

Final approval should be granted because the substantive terms of the Settlement Agreement provide monetary relief that is reasonable and in the best interests of the class, and has been widely embraced by the class, without even a single objection. The record supporting preliminary approval already shows that the Settlement was quite appropriate when considered against the uncertainty of further litigation, prior adverse rulings, and the likelihood that further protracted litigation would have achieved nothing additional for the class. BBU vigorously contested the facts and the law underlying Plaintiffs' claims and would have continued to do so if the case did not settle. Notwithstanding these disputes, BBU committed itself in the Settlement to pay up to $3.75 million, and ultimately will pay approximately $3.05 million under the Settlement once all of the claims are calculated and settlement shares are distributed, and all fees, costs and administrative expenses are paid. Walsh Dec. ¶ 17.

There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d. at 625. The Court should weigh the benefits that the settlement will realize for the class against that uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970) ("[C]lass actions generally present complex questions and involve large numbers of exhibits and witnesses. ... The trial would be lengthy and expensive."); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.1972) ("[T]here is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."). Applying all of these considerations, and in light of the robust approval by the class members, the court should give final approval to the Settlement.

9

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

**A.**     **The Proposed Settlement Is Fair to the Class.**

The fairness of a settlement is based not on what either side believes its best case scenario to be – it is well accepted that settlements are often agreed to at an amount less than the anticipated full recovery – but whether the settlement amount falls within the range of reasonableness. See, e.g., *Christensen v. United States*, 65 Fed.Cl. 625, 629 (Fed. Cl. 2005). Although Plaintiffs have always believed their claims were meritorious, they recognize that they could face significant legal, factual, and procedural obstacles to recovering. In light of the strengths and weaknesses of the case, Class Counsel believed, and continue to believe, that the Settlement is fair and reasonable because it achieves a significant benefit for the Class in a case where success was uncertain, and where some claims have not survived pre-trial proceedings. Furthermore, because there are several legal and factual disputes still unresolved, Class Members will certainly receive their Settlement benefits far faster than if they pursued their claims through trial and any appeal.

As discussed above, the Settlement establishes a fund of up to $3,750,000. Walsh Dec. Exhibit A. Instead of pursuing an uncertain victory, long in the future, the Settlement provides actual, substantial benefits that will be available to Class Members as early as June 2010. Each class member who filed a timely and valid claim is eligible to recover approximately $300 per full year of service (in workweek increments), before deductions for fees, costs, enhancements, expenses and tax withholdings, subject to potential increases discussed above depending on the claim rate, with an average potential award of $1,500 before such deductions. Including fees, costs and service awards, approximately $3 million of the $3.75 million that could have been claimed under this settlement has actually been claimed. In light of the many risks of continued litigation and the relief available, this Settlement was and is in the class members' best interests, and it should be approved.

The Settlement also resulted from a procedurally fair process. Class Counsel vigorously investigated the claims asserted against BBU, and conducted substantial discovery and factual review, including review of thousands of pieces data bearing directly on potential damages. Walsh Dec. ¶ 3. The Settlement came only after extensive, arms-length settlement negotiations

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

1   that were conducted after rigorous discovery regarding liability and damages, and under the

2   supervision of experienced mediators. The negotiations were protracted, and the mediations

3   themselves required numerous follow up phone calls; even after a settlement was reached, the

4   documentation and agreeing upon final language for the lengthy settlement agreement required

5   assistance from mediator Mark Rudy. Walsh Dec. ¶ 4. This demonstrates that the proposed

6   Settlement is the non-collusive product of hard-fought litigation.

7           **B.**       **The Responses of the Settlement Class Support Final Approval.**

8           Pursuant to the Court's preliminary approval order, on March 8, 2010, the Claims

9   Administrator mailed the Notice of Proposed Class Action Settlement and Settlement Hearing to

10   all potential Class members. Tittle Dec. ¶ 8. The postmark deadline to opt out of or object to the

11   Settlement was April 19, 2010. Of the 2,506 class members, only 20 submitted valid exclusions

12   from the Settlement, and no objections to the Settlement have been received. Tittle Dec. ¶¶ 16-

13   17. This very low opt-out rate, and the lack of any objections, demonstrates the adequacy of the

14   Settlement. *In re American Bank Note Holographics, Inc*., 127 F.Supp.2d 418, 425 (S.D.N.Y.

15   2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most

16   significant factor to be weighed in considering its adequacy. . . . In fact, the lack of objections

17   may well evidence the fairness of the Settlement.") (internal quotes and citation omitted); see

18   also *Class Plaintiffs*, 955 F.2d at 1291; *In re Omnivision*, 559 F.Supp.2d at 1043 ("[i]t is

19   established that the absence of a large number of objections to a proposed class action settlement

20   raises a strong presumption that the terms of a proposed class settlement action are favorable to

21   the class members.") Here, the fairness, reasonableness and adequacy of the settlement is well

22   established by this "most significant factor" of a complete absence of objections to the

23   Settlement and an almost complete lack of opt outs.

24           **C.**       **The Payments to the Plaintiffs For Their Service to the Class Are Reasonable.**

25           The Settlement also provides that, subject to court approval, the nine representative

26   plaintiffs each receive an incentive payment of up to $10,000. The payment of $10,000 to each

27   of the Plaintiffs as class representatives is intended to recognize the time and effort they

28   expended on behalf of the Class. "Courts routinely approve incentive awards to compensate

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

1  named plaintiffs for the services they provided and the risks they incurred during the course of

2  the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001);

3  *Fears v. Wilhelmina Model Agency, Inc.*, 2005 WL 1325297, 2005 U.S. Dist. LEXIS 7961, 9-10

4  (S.D.N.Y. 2005) (approving incentives of $25,000 and $15,000; noting cases approving awards

5  as low as $336 and as high as $303,000, with most awards being in the $10,000 to $50,000

6  range), *aff'd in part and vacated in part on other grounds*, 473 F.3d 423 (2d Cir. 2007). In *Coca-*

7  *Cola*, the court approved incentive awards of $300,000 to each named plaintiff in recognition of

8  the services they provided to the class by responding to discovery, participating in the mediation

9  process and taking the risk of stepping forward on behalf of the class. 200 F.R.D. at 694; see also

10  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (approving

11  $50,000 payment); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, *7 (S.D. Cal. Mar. 6,

12  2009) ("The payment of service awards to successful class representatives is appropriate and the

13  amounts of $25,000 are well within the currently accepted range.") In this case, the Plaintiffs

14  performed important services for the benefit of the class: they provided information regarding

15  the customs and practice of the company, its management and the rank-and-file employees who

16  made up the putative class. They produced relevant documents, and worked with Plaintiffs'

17  counsel throughout the case. Most of them attended both mediations. They responded to

18  significant discovery propounded by BBU, including document requests and interrogatories, and

19  submitted themselves to deposition. Spiro Dec. ¶¶ 2-14.  They faced the risk of liability to BBU

20  for costs, and perhaps even attorney's fees, if their claims failed. These tasks and risks were not

21  insubstantial. Accordingly, the modest proposed payments to the class representatives, for which

22  no class member has objected, are appropriate and justified and should also be approved.

23          **D.**      <u>**The Proposed Attorneys' Fees and Expenses Are Reasonable**</u>.

24          Pursuant FRCP 23(h), Plaintiffs also request an award of attorneys' fees and

25  reimbursement of costs from the Settlement funds and applied against Net QSF. For well over a

26  century, federal and state courts have recognized that when counsel's efforts result in the

27  creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an

28  equitable right to be compensated from that fund as a whole for their successful efforts in

12

338.013 MJW 05282010v9

1    creating it. See, e.g., *Boeing Co. v . Van Gemert*, 444 U.S. 472, 478 (1980) (the United States

2    Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common

3    fund … is entitled to a reasonable attorney's fee from the fund as a whole"). This doctrine rests

4    on the understanding that attorneys should normally be paid by their clients, and that unless

5    attorneys' fees are paid out of the fund where the attorneys' unnamed class member "clients"

6    have no express retainer agreement, those who benefited from the fund without contributing to

7    those who created it would be unjustly enriched. *Id.* Because none of these individuals have paid

8    Plaintiffs' counsel fees for their efforts during the litigation, equity requires them to pay a fair

9    and reasonable fee, based on what the market would traditionally require, no less than if they had

10   hired private counsel to litigate their cases individually. *Id.* at 479-481. Although this was a

11   "claims made" settlement, and not a common fund, most of the same principles apply.

12         Here, the attorney's fees are based primarily upon a lodestar analysis, capped at an

13   amount that is equivalent to 30% of the maximum fund BBU was making available under the

14   Settlement. Whether viewed as a straight percentage or as an hourly lodestar calculation, the

15   amount of fees sought by Class Counsel is reasonable. In settlements of less than $50 million,

16   such as this one, courts frequently award a higher percentage of the common fund as attorneys'

17   fees. See, e.g., *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming

18   an award equal to 33 percent of the fund); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375

19   (32.8 percent of the fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981)

20   (45 percent of a $7.3 million settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox*

21   *Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), aff'd 622F.2d 1106 (2nd Cir. 1980)

22   (approximately 53 percent of settlement fund). See also *In re Omnivision Technologies, Inc.*, 559

23   F.Supp.2d at 1046 (approving fees in the amount of 28 percent of a common fund, noting that "in

24   most common fund cases, the award exceeds that [25 percent] benchmark" for extremely *large*

25   class action settlements.)

26         The Ninth Circuit has long placed in its district courts' discretion whether to use the

27   common fund or lodestar method for calculating reasonable attorneys' fees. The district court is

28   entitled to weigh results achieved for the class and favorable settlement timing in giving a large

                                                   13

1   multiplier or a large common fund percentage. *Glass v. UBS Financial Services, Inc.*, 331

2   Fed.Appx. 452, 456-457 (9th Cir. 2009). Here, the amount, whether measured as a percentage of

3   the potential pool of funds, the actual payout, or the lodestar analysis, is reasonable and well

4   within market rates for similar quality work by similarly experienced and talented lawyers

5   working for clients who would negotiate either a percentage or an hourly rate in the open market.

6       This Settlement Agreement provides for a claims-made settlement. Often, such

7   settlements yield response rates in the 10-20% range, and responses in excess of 50% are not

8   typical. Where a response rate is extremely low, courts can, and sometimes do take the response

9   rate into account when deciding the amount of attorney's fees. However, the court need not

10  concern itself with such an analysis in this case, as the Settlement has seen a much higher-than-

11  typical participation rate of more than 60%, representing over 70% of the eligible settlement

12  funds. While the final payouts have not yet been calculated to the exact dollar, the approximate

13  payout by BBU under this Settlement, including net claims, attorney's fees and costs,

14  administration expenses and plaintiff service awards, is expected to exceed $3 million. Walsh

15  Dec. ¶ 17. Thus, even measured against the total amount of compensation that will ultimately be

16  paid when the Settlement is approved and all claims are processed, the total compensation to

17  Class Counsel will be a less-than-market rate of thirty-seven percent. More importantly, under a

18  lodestar analysis, the amount of fees requested is actually well below what would be considered

19  reasonable in light of the work that was needed and performed, the level of experience and

20  expertise of the attorneys, the results achieved and the prevailing market rates for such services.

21      The requested fee of $1,125,000 to the five law firms involved in the case[3] represents the

22  lodestar to date, with a *downward* multiplier. This is well within the Ninth Circuit's lodestar *plus*

23  multiplier fee methodology. See¸ e.g., *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 298

24  (N.D. Cal. 1995) (noting that multipliers in the 3-4 range are common in class action lodestar

25  awards); *Guam Soc'y of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 697-99 (9th Cir.

26

27  [3] Despite the number of attorneys involved, throughout these proceedings, there was little
    overlap or duplication of work. As the court may have observed, there was usually only one or
    two attorneys at hearings and conferences, and when more than one attorney was involved, it
28  was usually one on behalf of the Leonard plaintiffs and one on behalf of the Morrison plaintiffs.

14

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

1    1996) (affirming 2.0 multiplier). Class Counsel already spent at least 3,853 hours in this

2    litigation, and could exceed 4,000 hours before the matter concludes. The market hourly rate for

3    experienced class counsel in the San Fransico/Oakland/San Jose area is well in excess of $450,

4    and ranges as high as $650 for counsel with the level of experience that the plaintiffs' lead

5    counsel bring to this action. Assuming even the lower rate of $450, their 3,853 hours of work on

6    this matter yield a lodestar value of $1,733,850. Walsh Dec. ¶¶ 21-23; Spiro Dec. ¶ 15.

7            As is set forth in more detail in the supporting declarations, as of their most recent time

8    reconciliations, the approximate number of hours devoted to this case by class counsel include:

9    2,202 by the law firm of Spiro Moss, LLP, most of which (over 2,100) were incurred by lead

10   counsel Ira Spiro; 504 by the law office of Langford & Langford, APLC; 467 by the law office

11   of Walsh & Walsh, P.C., 580 by Gigliotti & Gigliotti LLP and 100 by the law firm of Ginez,

12   Steinmetz & Associates. Walsh Dec. ¶ 21.  This totals 3,853 hours, by experienced class counsel.

13   The principals at each of the five firms are all experienced litigators and class action attorneys

14   who have handled numerous multi-million dollar class actions, including cases of some note.

15   Walsh Dec. ¶ 22. Courts in California have found the reasonable value of their legal services to

16   exceed $450 per hour, and in several instances, more than $500 per hour. Walsh Dec. ¶ 22.  A

17   reasonable hourly rate for an attorney of their experience in the Bay Area is generally between

18   $450 per hour and $650 per hour. Id. At such typical rates, Plaintiffs submit that the proposed

19   award of $1,125,000 reflects an extremely modest lodestar award, with a multiplier of less than

20   one. Viewed another way, the amount requested represents an average hourly rate of $292 per

21   hour, which Plaintiffs submit is more than a third lower than the typical hourly rate of an

22   experienced employment class action attorney, and within the range of rates that are often

23   charged by novice attorneys for non-complex litigation work.

24           Finally, the requested amount of attorneys' fees was stated explicitly in the Notice of

25   Proposed Class Action Settlement and Settlement Hearing. Class Members had until April 19,

26   2010 to object to Class Counsels' request for fees and costs. No objections were raised against

27   either the amount of attorneys' fees sought or the award of costs sought. Tittle Dec. ¶ 17. Indeed,

28   no class member has objected to any aspect of the Settlement Agreement, and only 20 (less than

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

1   one percent) have opted out of the class action settlement. Tittle Dec. ¶ 16. The absence of any

2   objections to the fees and costs requested supports the conclusion that the requested award is fair,

3   adequate, and reasonable. *In re Omnivision*, 559 F.Supp.2d at 1048 ("[n]one of the objectors

4   raised any concern about the amount of the fee. This factor, like those above, also supports the

5   requested award…."); see also *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)

6   (affirming district court's order approving settlement agreement and allocation plan over

7   objections by several groups of bondholders); *Officers for Justice v. Civil Serv. Comm'n*, 688

8   F.2d 615 (9th Cir. 1982) (affirming district court's order approving consent decree over

9   objections by a class representative).

10        Class Counsel is also requesting to be reimbursed from the common fund for out-of-

11   pocket expenses they incurred during this litigation. Reimbursement for these expenses from the

12   common fund is appropriate for the same reasons attorneys' fees should be paid out of the fund:

13   all beneficiaries should bear their fair share of the costs of the litigation, and these are the normal

14   costs of litigation that counsel traditionally bill their paying clients. See e.g.,, *In re United*

15   *Energy Corp. Solar Power Modules Tax Shelter Investment Sec. Litig.*, 1989 WL 73211, *6

16   (C.D. Cal. Mar. 9, 1989); see also *In re Omnivision*, 559 F.Supp.2d at 1048 ("Attorneys may

17   recover their reasonable expenses that would typically be billed to paying clients in non-

18   contingency matters.") Furthermore, attorneys may be reimbursed for reasonable out-of-pocket

19   expenses that were "incidental and necessary to the representation of those clients." *Harris v.*

20   *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). As of May 28, 2010, Class Counsel had incurred

21   approximately $108,476.59 in litigation costs and expenses, and will continue to incur additional

22   costs through the conclusion of this matter. The current cost totals are ten percent lower than the

23   amount estimated as of the date of preliminary approval. By firm, the costs incurred have totaled:

24   $102,883.71 by the Spiro Moss firm (Spiro Dec. ¶ 17); $1,838.16 by the Langford firm

25   (Langford Dec. ¶ 8); $3,015.82 by the Walsh firm (Walsh Dec. ¶ 21) and $738.90 by the

26   Gigliotti firm (Gigliotti Dec. ¶ 3) These costs include numerous costly depositions, travel

27   expenses, mediator's fees, costs incurred certifying the FLSA collective action, expert costs,

28   photocopying and mailing expenses, website hosting for the website dedicated to this action and

16

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

1    other reasonable litigation-related costs. *Id*. All costs incurred here were necessary to the

2    informed prosecution of this litigation and would normally have been billed to a client paying for

3    counsel's services on a regular basis. These costs include no markup by Class Counsel, and they

4    are quite reasonable for a case of this duration and complexity and should be reimbursed in full.

5              **E.**    **The Court Should Approve the Payment of Reasonable Administration Costs**

6              The Claims Administrator, Simpluris, LLC, has fulfilled its Court-ordered obligation to

7    send to all potential Class members the Class Notice, to update addresses, and to track any

8    requests for exclusion from the Settlement and any objections to the Settlement. Tittle Dec. ¶¶ 3-

9    15. There is still much administrative work remaining to be done in this action. Following the

10   Court's approval of the Settlement, Simpluris will be responsible for performing the settlement

11   calculations (which calculations will be reviewed by Class Counsel) and issuing the payments to

12   Class Members. Tittle Dec. ¶ 19. The costs of settlement administration will not exceed $32,000.

13   Walsh Dec. ¶ 6, Tittle Dec. ¶ 19. Simpluris has submitted a declaration setting forth the

14   reasonable steps it has already taken in order to administer this Settlement and the additional

15   steps that will be required to complete Settlement administration following final approval. See

16   Tittle Dec. The costs of settlement administration reflect the amount of work required to properly

17   administer a notice, claims process and distribution involving 2,506 Class Members. In addition

18   to mailing out Notices to the class members, the Claims Administrator is responsible for

19   receiving, tracking, and reporting Opt-Outs (and objections, had there been any) and resolving

20   class members' address issues and disputes. The Claims Administrator was also responsible for

21   fielding calls from Class Members who have questions about the claims process. Furthermore,

22   the calculation of each Class Member's share of the Net Settlement Fund requires the Claims

23   Administrator to review various bits of employment data and other information regarding that

24   Class Member to arrive at the accurate figure. The Claims Administrator will be responsible for

25   accurately performing those calculations. In light of all the work that has been done, and remains

26   to be done, Plaintiffs request that the Court approve the payment of reasonable costs incurred by

27   Simpluris, LLC, in an amount of up to $32,000 to be made from the QSF.

28

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

338.013 MJW 05282010v9

VI.     **CONCLUSION**

The product of extensive and protracted negotiations over the course of several years, and after completion of two mediations and vigorous debate over many details of the settlement agreement, the parties have reached an arms-length agreement which provides fair and appropriate cash awards for any class member who wished to claim them – and a majority of class members did. There were no objections and few opt-outs. For these reasons, Plaintiffs request that the Court: (1) grant final approval of the proposed class action settlement and plan of distribution; enter an order and final judgment consistent with the terms of the settlement; (3) approve the service payments of $10,000 to each representative Plaintiff; (4) approve the payment of reasonable costs of $32,000 to the Claims Administrator, Simpluris, LLC; and (5) approve attorneys fees in the amount of $1,125,000 and reimbursement of attorney expenses in the amount of $108,476.59 .

Respectfully submitted,

DATED May 28, 2010                SPIRO MOSS LLP

                                  By: _____/s/_____ .
                                       Ira Spiro
                                       Attorneys for plaintiffs


DATED May 28, 2010                WALSH & WALSH, P.C.

                                  By: _____/s/_____ .
                                       Michael J. Walsh
                                       Attorneys for plaintiffs

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

338.013 MJW 05282010v9

1  Additional Attorneys for plaintiffs:

2  LANGFORD & LANGFORD, a PLC         GIGLIOTTI & GIGLIOTTO, L.L.P
   Michael S. Langford (SBN 125756)     Joseph J. Gigliotti (SBN 144979)
3  24681 La Plaza, Suite 220            gigliottilaw@msn.com
   Dana Point, California 92629         434 East Chapman Avenue
4  mklangford@aol.com                   Fullerton, California  92832
   Telephone:  (949)545-6540            Telephone:     (714) 879-1712
5  Fax:  (949) 545-6541                 Fax:           (714) 879-3429
   Attorneys for Kathleen Morrison *et al.*   Attorneys for Kathleen Morrison *et al.*
6
   GINEZ, STEINMETZ & ASSOCIATES
7  Rudy Ginez, Jr. (SBN 84978)
   926 North Flower Street
8  Santa Ana, California  92703
   Telephone:     (714) 541-2251
9  Fax:           (714) 541-5807
   Attorneys for Kathleen Morrison *et al.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POINTS AND AUTHORITIES RE MOTION FOR FINAL APPROVAL**

338.013 MJW 05282010v9